Good afternoon. Illinois Appellate Court, 1st District Court is now in session. The 1st Division, the Honorable Justice Michael Hyman presiding, case number 2-0-0-5-2-6, Agoric versus Board of Trustees of the City of Harvey Firefighter Pension Fund. Thank you. Good afternoon. With me is Justice Daniel Pierce and Justice Mary Ann Coughlin. We'll first the appellant introduce yourself and then the appellee. My name is Jerry Marconi on behalf of the appellant, John Agoric. Good morning. My name is Jeffrey Goodloe on behalf of the defendant appellee, the Harvey Firefighters Pension Board. Okay, so you each have about 20 minutes. We are not a stickler for the time limits, but we don't like to have repetition and so I assume, Mr. Marconi, you want to reserve some time for rebuttal. I do, your honor. I'll probably save at least five minutes unless I end up a little short of my initial argument. I mean we try to even it out and again we're not strict on it. The other thing is we will interrupt you once you hear us. Please finish your point. But we want you to know that we have a question coming. We've tried different ways, but that seems to be the best way to to go about it as if we were in the courtroom. So Mr. Marconi, please proceed. So may it please the court and Mr. Goodloe. The issue in this case is whether there is satisfactory proof that Firefighter Pogorek has recovered from his disability. As you know from the briefs, Mr. Pogorek was granted a disability pension I believe back in 2007, resulted from an injury in 2005. He's been receiving non-duty disability benefits since that time. In my briefs, I did raise the issue which is a little confusing in the case law about the standard of review and the burden. I believe I cited the Wilford case which looks at these and I'm going to call them a recovery case as opposed to someone who's going out on a disability and you need the three doctors in order to examine the firefighter or the police officer. This is a different part of the same section, but it basically spells out that the board should annually evaluate a person. That didn't happen in this case, but that's what the statute says and then upon satisfactory proof and you have to show a recovery. Now under Wilford... I have a question. I mean why is his prior medical history even relevant here because it's pretty far back except the 2015, but other than that it's back at 2005. Well I think it's relevant in this case due to the nature of his disability. He has this spondylolisthesis and if you go back and you look at all of those doctors who initially examined Mr. Pogorek, they all opine that it was a chronic permanent injury. There was nothing that much he could do to treat it other than have surgery. There was some conflicting advice that he got from the doctors. Some said to  But I think to your question, Justice Hyman, I think that's it's very important because it shows the nature of his disability. But don't we know that with that particular disability, some people can be pain-free or can do activities. As you said, it's a chronic condition and no one's saying it isn't still there, but even if it's there, that doesn't mean that he's not in a situation where he can't continue to do the responsibilities he has as a fireman. Right and I think that's what the board has made this into is the whole issue of pain. Because in their briefing they indicate that, and I don't remember the exact word, I don't think they used the word thesis. What matters is is whether or not he has pain. And I think that's the big issue here and I think that's where what I went into in my briefing. This was a situation where these are one of these people with this condition that definitely had pain. I believe it was Dr. Moisen who said that, you know, on a certain percentage even Dr. Weiner said that, that this condition can and does cause pain. So now the issue becomes looking at the evidence as a whole because, I mean, there's a line of cases where in this particular instance the board selectively relied upon just the opinion of Dr. Weiner. Does Firefighter Gork have pain? But didn't Dr. Weiner testify to the board that basically he was an inch away from full duty in 2005? And so, I mean, we're now we're at 2017. Things change as far as his condition may not change but the pain, as you said, you know, we're looking at the pain. Right, if you look at the pain and I kind of put this case and I know the board cited the Hoffman case where the court reversed the board because their experts said that that the applicant was never disabled. And they said that wasn't the issue. The issue is whether or not someone has recovered. Now Weiner goes back and I think this is again important and goes to your first question. You know, she says she looks at that 2005 functional capacity evaluation and disagrees with every single doctor. So when she says an inch away she's essentially saying that Firefighter Gork was not disabled back in 2005. And I think that's very important because it puts her at odds with every single doctor who's examined Firefighter Gork. And then when you talk about the pain and this is where I think the Kouzakis case was very important where it was very similar where they had Dr. Spencer opine before the Chicago Police Pension Board that that it wasn't debilitating pain. And in that case he looked at an MRI of Officer Kouzakis and he said it was pristine. And the Supreme Court reversed that board and said pain is a disability and you can't ignore the fact that a person has pain. And I think that's the big problem in this case. What evidence was there that the Gork did not have pain? The pension board never made a credibility determination that said that he was not credible. Well don't we have that? But isn't that isn't it a credibility determination? Because he says he has pain. She says he's recovered. So aren't you asking us to re-weigh the evidence and make a credibility determination? Absolutely not. The evidence is he has pain. That's what he testified to. Her evidence is she did tests and she she says he doesn't have that pain. I mean he testifies to pain but as the board says usually in these situations people will testify to pain because they understand that. She's saying as a a doctor and an expert in this area for everything she could see he doesn't have that pain. But I don't I don't think that's exactly what she's saying because I think one of the trustees when he was questioning her was talking to her about discogenic pain you know how can we determine whether someone's got this discogenic pain and she said that's very difficult. The test that she did I mean when you look at this clinical examination that did she did the the leg race test and she she testified that that was not going to be indicative as to whether someone would have pain with spondylolisthesis. She pressed down on his head and he said he had some pain in his shoulder. When she did the palpitation which she thought was a test he had pain in his lumbar spine similar to Dr. Gleason's examination. So she wasn't really doing I mean she did get some results of pain but she wasn't there's no way to know there's no test according to her to show the the amount of pain as somebody someone is having. And I think that that's I think that that's very important because and here's another big thing I think that Dr. Wehner testified to you know lots of times you know a doctor will say well the person's malingering they're engaging in symptom magnification. When she did the objective test and I signs she testified that she did not find any symptom magnification. So I think that that Dr. Wehner's opinion and that's that he doesn't have pain is really not based on anything. And I don't think you can discount like the court like the court ruled in Kouzakis you can't discount the fact that the person is in pain. The other I think the other big thing here too is and you and you raise the issue about this clinical test. How is that similar to engaging in the arduous duties of firefighting? I mean everybody seems to agree this is a very very heavy job you're going into fighters or fires there's possibility you might have to carry someone out even their daily activities you know with their training it's an extremely heavy duty job. So when when you go back and look in examining room this 30 minute exam where she took three phone calls how could you equate that with being recovered to go back to being a firefighter? You know and I think that that's one thing that she misses in her testimony. She doesn't talk about that. She says I believe this was her first firefighter recovery case. She didn't know whether or not or she said there was no lifting requirements in their job description. So she never looked at anything. She never tested him. She you know she could have at least said here pick up this 100 pound dummy in my office see if you can do that. And I think that as a matter of law to rely upon a 2005 functional capacity evaluation that's not competent evidence at all. Mr. Marconi I have a question from from reading the hearing. It seems to me and maybe I'm wrong because I'm not as familiar with these proceedings obviously as someone like you but it seems to me that if she had felt it was necessary she had the ability she could have ordered any tests that she wanted but yet she for whatever reason decided not to order anything. Am I understanding that correctly? But that's the point I brought up in the briefs. But I mean she had the ability in her office to do that and I and I think that's important. When I asked her about it she says well I didn't think it was necessary because it wouldn't help me in my decision. You know you also have to remember that when he went to see Dr. Baer Dr. Baer ordered an MRI. In her supplemental report Dr. Wainer never discusses that MRI. She goes through pages about what she reviewed and if you look at that if you look at that MRI which I believe is page 548 it's loaded with findings that would cause the pain that firefighter Pogorek was complaining about. So she had a lot of a lot of things at her disposal. She probably could have ordered an FCE. I mean that's what that's what she says she does in her regular practice. If there's an issue as to whether or not one of her patients could go back to work she will use an FCE to assist her in making that determination. Why not ask for one in this case? I mean she could have. Maybe Mr. Goodlow could have ordered it or called me and said would your client would he participate in a functional capacity evaluation? And unfortunately we have this long gap period where the board never sent Mr. Pogorek for the for the annual examinations. They waited from 2007 up until 2015 where Dr. Gleason examined and then Dr. Gleason found that he was still disabled. You know the reality of it why not send him back to Dr. Gleason? I mean you could doctor shop all day long until you find somebody that's going to give you the opinion you want. They found a doctor that and I raised it in my brief. 99 percent of her work is on behalf of employers and insurance companies. I know she tries to justify it saying well plaintiffs have treaters but that's not necessarily true. Plaintiffs hire experts all the time. Employees hire experts all the time. They found a doctor who had an inherent bias toward or against employees and I think she even said she knew what her opinion was without even looking at this additional evidence. How should we if anything what the fact that there were no annual reviews as the statute provides is that something that would have any relevance to our decision making? I don't know if it really has relevance as to whether or not there's sufficient evidence or satisfactory proof of recovery. I think it you know in reality would it have made it a lot easier to have this progression and have people evaluating him and have people doing these tests for pain you know and unfortunately it works against firefighter Pagore you know because now the board is saying well the only thing that matters is Dr. Weiner's clinical examination in her testimony. Had there been more examinations you know I mean the court the board would have had more information to determine whether or not he was getting better and again he has to recover. I mean her her opinion is more well he's not disabled. She never really explains how he recovered. How do you recover from spondylolisthesis which according to all doctors is a permanent chronic possibly painful. But that's not the issue that's not the issue the issue because people do recover not that they cured of it it stays with it's a chronic disease some are asymmetric some are have symptoms so again that that's not the issue here we all know that that was permanent in the sense not in the statutory sense but in the sense that it wasn't going to go away but that that's not the answer to this question at all. The question is does he have pain today can he do his work that's the question. And according to his testimony and according to his treating doctors the answer to that is no. And the thing is is that there's nothing in this record it's unimpeached testimony and and I don't think the board can ignore unimpeached testimony. I know they talked about the timing of when he goes to Dr. Baer when he goes to Dr. the other Condemary but the thing is that there's nothing in there to dispute the fact that he's having pain and again. But that was from before 2017 wasn't it? No this is pain going all the way up to 2019 this is pain going in even when he was having treatment during the during the pension board hearing because we had this over two different days I think April and December. So he was always complaining of pain and then going back I think the board pointed out he had a couple other medical issues and when he went to the doctor he would say that you know he had his his back hurt and there was a recommendation for surgery. According to my notes he said that the shoulder pain and sleep apnea pain but he didn't go to the doctor's with regard to back aches. He didn't go he didn't go for that reason but he mentioned back pain in those notes. Well that doesn't mean it's related necessarily we don't know that. No but I think if he's complaining of back pain even back then when he's going for another malady I think that's evidence that at least he's complaining of pain. He complained of pain with with regard to when Dr. Gleason examined him. You know the bottom line is while the doctors were saying look you've got this condition you got to work within your restrictions. Can he ride a lawnmower? Sure. Can he do some housework? Sure. But we're talking about a recovery in light of being a firefighter and going and climbing ladders carrying bodies going in stooping kneeling going into tight places. You know this isn't recovery that you know you can go out and cut the grass and I think I think the board misses that in this case. So I'm at about 17 minutes so I'll I'll reserve unless the court has any questions. Any other questions? None for me. All right thank you. Let me proceed. Okay good afternoon your honors and may it please the court and Mr. Marconi good afternoon to you as well. I just want to touch briefly on the standard of review because counsel had mentioned the Wilford case which uses a mixed question standard of review on a recovery case. I don't agree with that I think the appropriate standard review is the manifest way of the evidence standard of review and this court in Hoffman versus Orland Firefighters Pension Board set the standard of review and recovery cases as the the manifest weight standard. The same can be said for other first district cases involving recovery under the pension codes for the Antonelli case Trent Narrow Roads all of those cases use standard of review of the manifest way of the evidence. In Wilford they use the standard of review of mixed question because I guess there was some discussion as to the definition of the the word disability under article 6 of the pension code and that's what transferred it into a mixed question of law in fact and we just don't have that here. I'd like to talk briefly about the 2005 FCE. The plaintiff suggests that this case is comparable to Hoffman in that Dr. Wainer opined that the plaintiff recovered from disability because he was never really disabled back in 2005 based on the FCE and that's incorrect that was not Dr. Wainer's testimony and that's not where she wrote her report. She reviewed the 2005 FCE it was in the record it was sent to her by the pension board as it should have been and what the FCE concluded is that at that time even with the plaintiff claiming severe pain as a result of the aggravation of his spondylolisthesis that he was still able to work at the very heavy physical demand level and that the only restriction imposed by the FCE at that time was a restriction on lifting more than 120 pounds because there was some sort of a mechanical breakdown that he demonstrated lifting at that level and so Dr. Wainer's testimony was not that he was never disabled she said fine I understand that he was disabled in 2005 but in reviewing all the medical records which is exactly what the reviewing physician is supposed to do she said I note that in 2005 he was an inch away from being reinstated to full duty he just had he was working at he could have worked at very heavy levels and he just had this one lifting restriction so it was something that she put into the hopper when she rendered her opinion but never did she testify that he was not disabled that he was never disabled in 2005 and never should have been awarded a disability pension had she had she opined to that certainly then Hoffman would apply and the pension board would be in very deep trouble in this case but that's not where we are today what happened is that the pension board sent all of the evidence that it had so all the evidence from 2005 the 2015 independent medical examination annual examination with Dr. Gleason to Dr. Wainer to review Dr. Wainer reviewed all of that material Dr. Wainer performed a clinical examination of of the plaintiff she reviewed the job description and at the end of the day in performing her clinical examination she did what doctors do in these examinations and her findings are noted in her reports and she testified to those findings and that's the evidence that ultimately supports the pension board's decision that as of 2017 the plaintiff had recovered from his disability what about the evidence uh that uh the uh Mr. Pagorek uh talking about his pain talking about the problems he's having and the Dr. Wainer testified to that and she mentioned that in her report she never disputed that the plaintiff came into the examination and told her about his pain um it's not she doesn't know it's subjective she can't he may have the opinion he may not I mean this you know it seems like we're supposed to you're saying the board's supposed to not even consider that I mean the board did the board did it not take account of what he said no the board did take account of what he said and so did and so did Dr. Wainer we know because we know Dr. Wainer's ultimate opinion with respect to the subjective pain complaints because she completed or she performed a clinical objective examination and that's and so she did the palpation test and she did the straight raised leg test and she tested the reflexes and the strength and the only time that the plaintiff verbalized any sort of pain and it was him verbalizing pain was verbalizing mild pain on the lower back area and that was it and I think that that's kind of instructive in a way when we look at the Kizukis case because the plaintiff seems to hang his hat on Kizukis and say well you know the pension board cannot discount the plaintiff's pain complaints and the pain complaints are unimpeached but they are impeached because Dr. Wainer performed a clinical examination which the supreme court recognized in Kizukis is the objective evidence in the case and said look I don't agree with with the plaintiff's subjective complaints they are not but here that objective so-called objective evidence when you consider the nature of his disability my understanding from what I read in the record is that that doesn't necessarily indicate whether he has pain or not. Those tests you know we're talking about a certain type of pain that those tests do not necessarily reveal one way or the other and in fact I thought she said that you know it's not you can't tell from those tests so I'm kind of lost from your your reasoning. So I think that what the what the doctor testified to is that the straight leg raise test in particular is not able to verify whether the plaintiff has pain related to the spondylolisthesis but it can indicate whether there is pain referred to from spinal stenosis at L5 which the plaintiff certainly has and when she performed that test it did not replicate any pain so from that perspective even though there is this finding on the MRI of some spinal stenosis at L5 in doing the straight leg raise test it did not elicit any pain so yes there's this finding but it's not producing any pain so what she did was go through not just the straight leg raise test but she went through other tests as well the palpation test there was no paraspinal spasm and that's different from a case like kazookas where the court recognized they said look there are doctors who examine kazookas and perform clinical tests no different from the tests that were performed by Dr. Wainer in this case and in the kazookas case those tests elicited all sorts of pain responses from kazookas there was grimacing there was paraspinal spasm so a person can't voluntarily control paraspinal spasms but and so from a kazooka standpoint the court said look this person has pain it's verified by these doctors tests they agree with it they find it's disabling it's documented and the board erred when it relied on the report of a spinal surgeon who said yes she has pain but the MRI otherwise is fine so from that perspective um you know kazookas the board gets reversed in that case but in this case focusing on kazookas Dr. Wainer performed the exact same types of objective tests in the form of her clinical examinations that Dr. Yapor and Dr. Demarest performed in the kazookas case that the supreme court said was objective evidence and when she performed those tests she did not it did not elicit any of the pain responses that the plaintiff was otherwise otherwise uh saying that he had it certainly didn't elicit a pain response of extreme pain and grimacing facial grimacing and and paraspinal spasming and those types of things all she got was him vocalizing he says well I have a little mild pain in my lower back when you touch here and so the testimony from Dr. Wainer was look does that testimony does does mild pain prevent him from from recovery and returning to duty as a firefighter based on what he vocalized and the answer from Dr. Wainer was no she testified unequivocally after performing all of her tests reviewing all of the medical records in addition to the supplemental records that came in from the additional treatment that occurred after the IME with Dr. Wainer and at the end of the day she didn't change her opinion she stood by her opinion which is that the plaintiff had recovered from his disability and I want to correct what did she rely on that's any different than Dr. Gleason in reaching the exact opposite conclusion that he did well she relied on the same sets of medical records so from 2005 but she relied on her clinical examination so Dr. Gleason performed a clinical examination and he said based on my clinical examination although it was normal I don't find there's anything neurologically wrong with with the plaintiff but I believe his subjective complaints of pain so every medical every medical test and every medical doctor who's examined this firefighter has come to the exact opposite conclusion from Dr. Wainer and and the only difference is her half hour or whatever it was examination where she took three phone calls during the half hour well no I mean I I disagree with that and I think that that's the case in every restoration case is that we're always going to be faced with a situation where there are the three or the initial doctors reports and the board has found that the person is disabled based on that and then there are going to be examinations uh throughout time and those examinations if they conclude that the person remains disabled then they conclude that the person remains disabled and the board doesn't take any action but eventually we might run into a situation like we did in this case where a doctor examines the plaintiff and concludes that the plaintiff's recovered from disability and so you know it presents a conflict in the evidence but not really because the issue is not whether the plaintiff was disabled in 2015 or remained disabled in 2015 or was originally disabled in 2005 circumstances can change over time and that's what Dr. Wainer testified to that this pain although uh it it's it is not permanent um it can last forever or it can improve over time and this is what's your response to the two doctors that examined him after Dr. Wainer's examination and found that he needed additional tests and treatment and all sorts of complaints well it presents a conflict in the evidence your honor and so we took that additional evidence uh we sent that additional evidence back to Dr. Wainer and said here are the opinions from Dr. Bayer and here are the opinions from Dr. Comanduri she disagrees but it's unclear to me why well because because i think she disagreed based on her report that um the presentation of the plaintiff was inconsistent with her examination that she had performed in 2017 and that after she had issued her report concluding that he had recovered from disability then the plaintiff goes and seeks out more treatment where he had never sought out treatment specifically for spondylolisthesis pain before and now he presents with uh with extreme pain and radiculopathy and Dr. Wainer said look when i examined him in 2015 he didn't have any of these symptoms he wasn't complaining of extreme debilitating pain and of any sort and it's ironic that i issue a report that says he's recovered from disability and now he seeks out a treating physician goes in and says i have this you know debilitating pain and that treating physician the treating physicians did what treaters do when somebody comes in and says i have pain they said okay if you have this type of pain you're telling me that that you have it then i'm going to refer you for additional treatment but at the end of the day if if it's it just it presents a conflict in the evidence um that the pension board has to has to reconcile and it's it's a it's a function of the conflicts and again it goes back to Dr. Wainer reviewed everything and she simply how does this work so he's 47 i think at the time of this exam and he said he's had these examinations since the date of the injury a long time ago so when he reaches the age of 50 then he doesn't have to have exams anymore is that how this works so well in Hoffman in in dicta i i think in Hoffman this court held that examinations are barred at age 50 and what the statute actually says is that no examinations shall be required after age 50 so that wasn't the actual holding in the case but in dicta it seems to suggest that pension boards are barred from sending somebody for a medical examination after age 50 but the case has really never been decided so is it that the pension board is barred from having somebody examined at age 50 or it's not required to have somebody examined after age 50 but it could under the the you know the proper set of circumstances if they found out that somebody's performing triathlons or something and they're 52 years old there's no custom and practice that generally is followed so the custom and practice because of Hoffman has been at age 50 the pension boards for the most part in my experience conclude that we don't have authority to send somebody for annual examinations after age 50 and if we set it up we're probably going to you know get hit with a injunction and and battle it out in court so relying on Hoffman most of my boards have have never taken that approach thank you yes i have a mr goodlow i have a question did did uh the late the board's physician conduct any test to determine whether the firefighter could lift heavy weights over 120 pounds so she did not she did not require the plaintiff to lift over 120 pounds she did not well it seems to me that the probably the major basis why he went on disability in the first place was because of his inability to lift heavy objects over 120 pounds now that back trouble is back trouble you know it comes and goes or it's it's chronic it's persistent or it's not if the major reason or the reason in my mind he was put on disability in the first place was his inability to lift heavy objects why would somebody conclude that he's no longer suffering from that disability if they don't know whether he can lift up heavy objects which is right right and i think it's based on uh the results of her clinical examination as well as her review of all the medical records um so after performing the examination that only disclosed his vocalizing mild pain uh in the lower back it was her opinion based on her clinical expertise and having treated firefighters that the restriction of lifting 120 pounds in the fce would no longer apply did she require him to lift more than 120 pounds she didn't could she have come to the pension board and said look i can't render an opinion in this case knowing about the 120 pound restriction in the 2005 fce without having him undergo an fce she could have done that and i think the plaintiff could have also asked the pension board and said look we want to go get our own fce or we want you to send for an fce and either dr wainer requested an fce or ordered one and the plaintiff didn't specifically ask for one so dr wainer was aware of the restriction and it's based on her clinical examination that she ultimately concluded that restriction no longer applied but i think what justice pierce is getting at and it troubles me as well she's making this conclusion with actually absolutely no basis in fact who knows how much the guy can lift i mean isn't that a pretty important point when you're a firefighter it is an extremely important point and and i can just go back to that point that she was aware of the restriction in the fc in the fce and she was also aware of the significant pain complaints that the plaintiff had in 2005 and when she examined him in 2015 finding that it was a clinically normal examination it was her conclusion i thought it was 2017 2017 excuse me correct it was it was her conclusion that that would no longer apply based on her uh her clinical examination of the plaintiff and again she could have ordered the fce she could based on the exact same information another doctor concluded that he couldn't right that that's correct and and i don't know if he if dr gleason specifically referenced that but that's the case in in every restoration case is that there's always going to be a a series of opinions that conclude that the person remains disabled until we get to an opinion where the concludes based on the examination that the person's recovered from disability and that's what happened in this case but that's a fact specific conclusion i would think that that would have to be based on some kind of facts i i think it is i think it's based on the findings of the clinical examination from 2005 no from from 2017 that dr winter performed but she didn't perform any tests to determine whether he could lift over 120 pounds not specifically requiring him to lift over 120 pounds no that would typically be done through an fce but she didn't uh she never ordered one and uh and never asked for one and i'm sorry maybe i'm getting confused here i thought she was relying on the 2005 fce am i wrong about that yeah i'm sorry your honor relying on the 20 i thought she was relying or at least referenced the 2005 fce she did reference the 2005 fce only noting that at that that at that time in 2005 the plaintiff was within an inch of returning to uh to duty at that time because he could could under the fce work at the very heavy physical demand level and the only restriction found by the therapist in the fce was a breakdown of lifting mechanics of over 120 pounds and so that's that's the extent to which dr wiener referenced the fce well you know it seems to me that that the board is taking a terrible chance if the firefighters on a duty or a disability pension because he can't lift over 120 pounds to say no you you should you're fit to go back to work but we don't know that you can lift more than 120 pounds they put him back to work he goes to work and he gets now a duty disability not a non-duty disability because he's at a firehouse and he has to do something and lo and behold he can't lift 120 pounds and you know he throws his back out again so it just seems that if the issue is can you do the firefighters duties then the expert should be saying these are the duties and he can perform them or not as opposed to saying and i don't you know i think he can but i don't i haven't tested for it so that's the troubling aspect of it i understand and those questions were asked of the doctor uh during the hearing as to whether the fce restriction whether she believed within a reasonable degree of medical certainty that the fce restrictions from 2005 still applied or whether he was capable of lifting more than 120 pounds and as i recall her testimony was that based on everything that she had reviewed in the record in the exam that it was her opinion that the fce restriction no longer applied so i mean that's what the pension board had to had to go with in this case and i think that you know in every restoration case assuming that the person comes back to work i mean there is always a possibility of future injury but it's that's pension board cannot keep people on disability if they have evidence that they believe is competent evidence that the person's recovered from disability based on a fear of a future a future injury well that's fair enough fair enough i believe my time is about up yeah you can why don't you finish up and then we'll hear rebuttal right yeah so i again i believe that the the question that the case presents a a conflict in the evidence um and you know it's up to the pension board to reconcile those conflicts and when faced with the conflicting the conflicting medical medical evidence uh it's the the pension board's ultimate decision subject to whether the board's decision was against the manifest weight of the evidence and uh dr weiner reviewed everything um she performed a clinical examination ultimately she opined within a reasonable degree of medical certainty that the plaintiff had recovered from his disability uh so the pension board would ask that the uh that the court affirm uh the trial court's decision affirming the pension board's decision thank you thank you um i'll just follow up with that last point um i don't think there is a conflict in any of the evidence the evidence is the evidence it's the competency of the evidence and justice coghlan asked the question well what has changed in the 18 months between dr gleason and dr weiner and i think if you look at those if you look at those reports dr gleason does note he has radiculopathy he's got this pain going from his back into his right leg that's the same thing found by dr bear and dr condo murray and firefighter begork was getting epidural steroid injections in order to relieve the pain now if you go back and look at dr gleason's report and this i think this is something that justice pierce touched on dr gleason looks at the duties of a firefighter and not only does he opine that that firefighter borg has this long-standing chronic condition but he also said um that he looks at the department of labor uh rules and rags and said it's a it's a very heavy duty job description he can't do the job of a firefighter and dr weiner never really goes there she doesn't have him she doesn't test to see whether or not he can perform those duties of a firefighter and i think without that how do you come to the conclusion that somebody has recovered from this disability i think it was also dr gleason who used the word arduous in terms of his knowledge of the duties of a firefighter so i think that's very important because weiner doesn't really get into that um i also cited some law that that the doctor's opinion can't be based on speculation it can't be based on evidence that isn't there and i think she testified that he doesn't put himself firefighter park doesn't put himself at more risk by going into a burning building and carrying out a 200 pound person because she never read about it in the literature that's not evidence that what is she relying on i mean basically you're saying that uh she's not as justice pierce said indicated she's not taking account of the nature of the position for which he is being asked to go back to and that correct as a matter of law you're saying if we were going to look at this as a a point of law that in in considering this type of situation that the uh reviewing doctor has to take account of that because that's relevant and absolutely uh meaningful in any kind of decision whether they do it if you don't do that if you don't take account of that then what is the examination worth right and the thing is when you look at the board's decision in order they don't go back and forth and and really evaluate the other doctor's opinion they just basically say well she's a practicing surgeon and we believe her and in this case is over because we're the board now if this was a case like roads they cited where pagoric was dressing up as a rodeo clown and getting in a barrel and rolling around a rodeo and getting out and or doing some of these other things that some of these cases have i get that i mean because that's contrary and contradictory to the but they don't have that here there's nothing to impeach agora about his limitations this is something that every doctor told them you got to live with he testified look i don't want surgery right now his daughter just had surgery to her back i'm going to live as long as i can without going having the surgery will he eventually have it probably but but the issue going forward is has he recovered and i don't find any evidence you can't say in a 30 minute clinical examination that you can determine somebody can dress up in full gear and go fight fires climb ladders carry out people where where not only is the public dependent upon you but your partners are and if you're in a burning building and your back goes out you can't drag someone out of there that has deadly consequences um and i just don't see anything in this record to support dr weiner's opinion that firefighter begork has recovered to the extent he can go back to full firefighting duties thank you um i want to thank both of you uh for your excellent briefs and also well prepared and informative oral arguments uh you both did an excellent job on zoom and we appreciate it very much and we will take the case under advisement